[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 909 
Ellie Mae Lavett Carr filed a complaint against her son, Claude Lavett, to cancel a deed and recover a ten acre tract of land located in Fultondale, Alabama. Mrs. Carr died a few months later. The executor of her estate, William A. Lavett, was substituted as plaintiff in the action. Claude Lavett filed suit against the heirs and devisees of Mrs. Carr to quiet title to the ten acre tract of land. The two actions were consolidated for trial.
The essence of Mrs. Carr's complaint is that she conveyed the land based on the fraudulent misrepresentations of her son. Mrs. Carr alleged that Claude Lavett moved into a house on his mother's property in 1967. Mrs. Carr wished to give her son an acre of land on which to build a new house. Mr. Lavett needed a loan to finance the building of the house, but could not secure a loan without collateral. Claude Lavett allegedly misrepresented to his mother that if she would convey the entire tract to him, he would secure a loan to build the house, and reconvey the property back to Mrs. Carr. Mrs. Carr executed a deed of the tract to her son, stating $1.00 as consideration. On July 11, 1975, Claude Lavett executed a deed transferring one acre of the land to Mary Warren. On the same day, Mary Warren executed a deed reconveying the land to Claude Lavett. The latter deed was not recorded until January 16, 1979.
On May 16, 1978, Mrs. Carr filed suit against Claude Lavett. In an affidavit, she stated that her intent was to devise the ten acre tract to her three sons, to be divided equally. Mrs. Carr expressed this intent in her will which was executed May 9, 1978.
The parties tried the action before the trial judge, sitting without a jury. The trial court entered a judgment in favor of *Page 910 
the appellee, Claude Lavett. The estate of Mrs. Carr appeals.
At trial, the parties introduced conflicting testimony about the reason for the transfer of the disputed tract of land and the terms of the transfer. Claude Lavett testified that his mother transferred the property to him to prevent the property from being sold, so she might have a place to live when she was older. He testified that his brother offered to buy the land from their mother, with the intent of dividing the property and selling it in lots. He testified that Mrs. Carr intended for him to have the property, and said she would deed the property to him at that time if he would promise not to sell it. Claude Lavett's wife and sister-in-law testified that Mrs. Carr told them that she wanted her son, Claude, to have the ten-acre tract.
William Lavett, the executor of Mrs. Carr's estate, testified that Mrs. Carr, in conversations with him, told Mr. Lavett that she transferred the property to Claude only temporarily, to secure a loan. William Lavett claimed that his mother said that she agreed to transfer the property as security for a mortgage, and that Claude agreed to use the funds to build a new house on the land. After the house was completed, Claude Lavett was to reconvey the land to his mother and she would then deed one acre and the new house to him. William Lavett's ex-wife corroborated his testimony. Likewise, the affidavits signed by Mrs. Carr before her death stated substantially the same testimony. Mrs. Carr's will, executed about the same time as the affidavits, devised the land to her three sons, with the exception of one acre, which was to go to Claude Lavett.
The appellants contend that the admission of certain testimony, which was objected to at trial, is reversible error. The appellant asserts that the following testimony of Mary Warren, Claude Lavett's sister-in-law, was inadmissible as violating the hearsay rule and the Dead Man's Statute (Code 1975, § 12-21-163):
 MR. COLEMAN: Your Honor, we are going to object. It's against the Dead Man Statute. She's testified she is the sister-in-law to a party here in interest, it's also hearsay, outside of the presence of the two Defendants.
THE COURT: Overruled.
MR. COLEMAN: Except
 Q: (by Mr. Peyton) Did you have any conversations with Mrs. Carr — do you remember the question?
A: Yes.
Q: You may answer it if you do.
A: Well, I remember her saying, she told me —
 Q: Wait a minute. First, did you have such a conversation?
A: Yes.
 Q: Now, what did she say during the course of that conversation?
 MR. COLEMAN: Your Honor, same objection. Dead Man Statute. Also, hearsay.
THE COURT: Overruled.
 MR. SHIELDS: I don't know if we need to object, Your Honor. But, we also put our objection on the record.
THE COURT: Objection overruled.
MR. PEYTON: You may answer.
 A: Well, she told me that she was real glad that Farley and Dot moved out there on the land, she couldn't get anyone to move out there. She wanted them, you know, to have the land, would be out there around the home. `Cause, they did move out there on the land.
Hearsay may be defined as evidence of an out of court statement, being offered to show the truth of the matter asserted. Stephens v. Central of Georgia Railroad Co.,367 So.2d 192 (Ala. 1978). The general rule is that hearsay is inadmissible. Id. A well recognized exception to the hearsay rule is a declaration, by a person not available at trial, made against his or her pecuniary or proprietary interest — a declaration against interest. Gamble, McElroy's AlabamaEvidence, § 245.01 (3d ed. 1977). See Redmond v. Self, 265 Ala. 155, 90 So.2d 238 (1956). The testimony of Mary Warren falls within this exception to the hearsay rule. She testified that Mrs. *Page 911 
Carr stated that she wanted her son, Claude, to have the ten acres. This statement by Mrs. Carr is clearly against her pecuniary interest — acknowledging that she desired her son Claude to have the property that she had transferred to him.
Section 12-21-163, the so-called "dead man's statute" provides that:
 "[N]o person having a pecuniary interest in the result of the action or proceeding shall be allowed to testify against the party to whom his interest is opposed as to any transaction with, or statement by, the deceased person whose estate is interested in the result of the action or proceeding or when such deceased person, at the time of such transaction or statement, . . . unless called to testify thereto by the party to whom such interest is opposed or unless the testimony of such deceased person in relation to such transaction or statement is introduced in evidence by the party whose interest is opposed to that of the witness or has been taken and is on file in the case. No person who is an incompetent witness under this section shall make himself competent by transferring his interest to another."
Several provisions of the dead man's statute indicate that the testimony of Mary Warren and Claude Lavett is not excluded.
The statute excludes testimony of a person with an adverse interest unless "the testimony of such deceased person in relation to the transaction or statement is introduced in evidence." In the present case, Mrs. Carr filed affidavits relating her version of the transaction transferring the disputed property. "Testimony" is evidence delivered by a witness either orally at trial or in the form of affidavits or depositions. Black's Law Dictionary 1646 (4th ed. rev. 1968). Thus, the introduction of Mrs. Carr's affidavits into evidence via Code 1975, § 35-4-70, renders the dead man's statute inapplicable.
The testimony of Mary Warren is also admissible because Warren did not have an interest adverse to Mrs. Carr's estate. The dead man's statute excludes testimony only if four criteria are met:
 (1) The testimony concerns a transaction or statement with a deceased person.
 (2) The estate of the deceased will be affected by the outcome of the suit.
(3) The witness has a pecuniary interest in the suit.
 (4) The interest of the witness is adverse to the deceased person or his or her estate.
See Bank of the Southeast v. Koslin, 380 So.2d 826 (Ala. 1980).DeShazo v. Miller, 346 So.2d 423 (Ala. 1977).
Claude Lavett transferred one acre to Warren in 1975, and Warren reconveyed the property the same day, although the reconveyance was not recorded until 1979. Warren's conversation with Mrs. Carr occurred prior to Warren's attaining an interest in the property. In order to exclude a witness's testimony, section 12-21-163 requires that the adverse interest of a witness exist "at the time of such transaction or statement." Mary Warren's interest did not exist at the time of the alleged conversation with Mrs. Carr, nor did the interest exist at the time the action was filed or was pending. Thus, the testimony of Mary Warren was admissible.
The appellant also contends that the judgment of the trial court is against the weight of the evidence. The executor's argument is based on two contentions concerning the burden of proof. First, he claims that Mrs. Carr's affidavits present prima facie evidence under Code 1975, § 35-4-70, of her right to cancel the deed, and that the appellee failed to present sufficient evidence to overcome the prima facie case. Second, the executor asserts that a parent-child relationship is a confidential relationship and the burden falls on Claude Lavett to show that the transaction was fair.
Section 35-4-70 states that filing affidavits with a deed establishes prima facie evidence of the facts stated in the affidavit. Prima facie evidence may be defined as evidence which suffices for proof of a particular fact until the fact is contradicted *Page 912 
by other evidence. Tittle v. State, 252 Ala. 377, 41 So.2d 295
(1949). Prima facie evidence is the quantum of evidence necessary to prevent an action from being dismissed for failure to state a claim. See J. Hazard, Civil Procedure (1978). If no other evidence is submitted to contradict the prima facie evidence, the party presenting the evidence is entitled to judgment. In other words, a prima facie case meets the party's burden of proceeding, and if no contradictory evidence is permitted, it also meets his or her burden of proof.
The burden of proof does not shift to the other party by presentation of a prima facie case. The burden of proof remains with the plaintiff. If the other party introduces evidence to contradict the prima facie evidence, that party has met its burden of proceeding, and the issue is in the domain of the factfinder. It is only when a party presents a certain high quantum of evidence that establishes no doubt as to his or her right to a verdict, that a directed verdict may be granted in the party's favor.
The appellant also asserts that the burden is on Mrs. Carr's son, Claude, to prove that the transaction was fair and equitable. Nevertheless, it is only after the trier of fact finds that one party is the dominant party in a confidential relationship, that the burden shifts to the dominant party to prove the transaction is fair, just and equitable. See Killoughv. DeVaney, 374 So.2d 287 (Ala. 1979); Jones v. Boothe,270 Ala. 420, 119 So.2d 203 (1960). There is no evidence in the record showing that Claude Lavett was the dominant party in the transaction in which Mrs. Carr transferred the land to the appellee. The question of who is the dominant party in a relationship is a question of fact. Id. Implicit in the trial court's judgment for the appellee is the finding that Claude Lavett did not exert undue influence over his mother. The evidence supports its findings.
The finding of a trial court, sitting without a jury, will not be reversed on appeal unless plainly and palpably wrong.Killough v. DeVaney, 374 So.2d 287 (Ala. 1979). The judgment of the trial court is due to be affirmed if supported by credible evidence. Id. In the present action, both sides presented opposing testimony. Claude Lavett, his ex-wife, and his sister-in-law all testified that Mrs. Carr intended Claude to have the disputed property and admitted so on her death bed. The executor presented testimony that Mrs. Carr intended her son Claude to have only one acre of land. The trial court reasonably chose to believe the testimony of the appellee. Since the judgment is supported by credible evidence, it is hereby affirmed.
AFFIRMED.
TORBERT, C.J., and ALMON, EMBRY and ADAMS, JJ., concur.